**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Adam HUNZER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 27, 2004.

Filed Jan. 12, 2005.

Reargument Denied March 18, 2005.

Michael D. Yelen, Wilkes–Barre, for appellant.

Frank Barletta, Assistant District Attorney, Hazleton, for Commonwealth, appellee.

Before: STEVENS, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Adam Hunzer appeals from the December 15, 2003, aggregate judgment of sentence of 30 to 60 months imprisonment and a consecutive 5 years of probation imposed after a jury found him guilty of aggravated indecent assault [1] and endangering the welfare of children.[2] After careful review, we affirm the judgment of sentence.

¶ 2 This case arises from appellant's sexual assault of his then three-year-old daughter on June 28, 2000. He was found guilty of the aforementioned charges on August 28, 2003 and post-sentence motions were denied by the court on April 19, 2004. This appeal followed.

¶ 3 Appellant raises multiple issues on appeal. We begin by addressing appellant's claim the evidence was insufficient to sustain his conviction for aggravated indecent assault. Appellant's brief at 3, 16. Specifically, appellant argues "there is insufficient evidence of record to conclude that [he] digitally penetrated his daughter's vagina." Id. at 15. We disagree.

¶ 4 Our standard of review in assessing a challenge to the sufficiency of the evidence is well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa.Super.2001) (citations and quotations omitted).

¶ 5 A person will be found guilty of aggravated indecent assault if they engage "in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S.A. § 3125(a), Offenses defined.

¶ 6 Viewing the evidence in the light most favorable to the Commonwealth, we conclude there is ample evidence to support the finding that appellant penetrated his daughter's vagina in violation of § 3125. This Court has determined "that the term 'penetration, however

1. 18 Pa.C.S.A. § 3125(7).

2. Id., § 4304.

slight' is not limited to penetration of the vagina; entrance in the labia is sufficient." *Commonwealth v. Hawkins,* 419 Pa.Super. 37, 614 A.2d 1198, 1200; footnote 1 (Pa.Super.1992) (citations omitted).

¶ 7 In this case, the testimony of both the victim and Deborah Deitrick, the victim's grandmother, was sufficient to establish the element of penetration. The victim, who was six at the time of trial, testified appellant hurt her "[b]y sticking his tongue and his finger in my private area." N.T., 8/26/03, at 292, 294. She reiterated this fact at least four times during cross-examination. *Id.* at 319, 323, 325–326. Using an anatomically correct doll, the victim further demonstrated the manner in which appellant placed his finger in and around her vagina on the day in question. *Id.* at 299–301, 614 A.2d 1198.

¶ 8 Deborah Deitrick testified to the victim's unusual actions and statements on the day following the offense. Specifically, Deitrick testified that the victim poked her great grandmother in the vaginal area twice. *Id.* at 360–361. She further testified that the victim told her appellant had "stuck his finger in my hole and then he licked me down there." *Id.* at 367–368. Deitrick also testified the victim then demonstrated oral and digital contact in the corresponding area of a toy bear. *Id.*

¶ 9 Hazleton City Police Detective Gino Fedullo testified that he interviewed appellant on August 29, 2000 and appellant admitted to touching and playing with his daughter's vagina in a sexual manner. N.T., 8/27/03, at 554–556. Officer James Sharratta of the Plains Police Department also interviewed appellant and testified that appellant admitted he remembered sticking his finger into his daughter but did not remember licking her on the day in question. *Id.* at 588–589.

¶ 10 "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super.2003). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Hopkins,* 747 A.2d 910, 914 (Pa.Super.2000) (citation omitted). In this case, the jury obviously concluded there was sufficient evidence to establish appellant's guilt of aggravated indecent assault, including the element of penetration. We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. *Commonwealth v. Chiari,* 741 A.2d 770, 775 (Pa.Super.1999). Accordingly, appellant's claim must fail.

¶ 11 Appellant next argues his conviction for aggravated indecent assault was against the weight of the evidence. Appellant's brief at 3, 19. Scrutiny of whether a verdict is against the weight of the evidence is governed by the standard set forth in *Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403 (2003).

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the

trial court palpably abused its discretion in ruling on the weight claim.

*Id.* at 443, 832 A.2d at 408 (citations omitted).

¶ 12 Appellant contends "even if it is deemed that there is some evidence of improper digital penetration, such evidence is so greatly outweighed by contrary evidence that the jury's conviction of aggravated indecent assault constitutes a miscarriage of justice." Appellant's brief at 19. We disagree.

¶ 13 "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Galindes,* 786 A.2d 1004, 1013 (Pa.Super.2001) (citation omitted). In this case, the Commonwealth presented six witnesses, including the victim. The jury evidently found the Commonwealth's witnesses credible, and chose not to believe appellant's version of the events. After careful review of the record, we cannot find the verdict is so "contrary to the evidence as to shock one's sense of justice." *Champney, supra.* Accordingly, we conclude appellant's claim of trial court error is without merit.

¶ 14 Appellant next asserts the trial court erred in concluding the child victim was competent to testify. Appellant's brief at 3, 23. Specifically, appellant contends the victim's "immaturity during the relevant time rendered her incapable of accurately perceiving the relevant facts, as required by Pa.R.E. 601." *Id.* at 24.

¶ 15 It is well-settled that the determination of whether a child is competent to testify is within the sound discretion of the trial court, and an appellate court should not interfere with the lower court's ruling absent a manifest abuse of discretion. *In Interest of J.R.,* 436 Pa.Super. 416, 648 A.2d 28 (1994); *Common-*

*wealth v. Short,* 278 Pa.Super. 581, 420 A.2d 694 (1980). In making such a determination, the court should be guided by the following principles:

[C]ompetency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency. In making its determination, the court must inquire whether the child possesses: (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Commonwealth v. D.J.A.,* 800 A.2d 965, 969 (Pa.Super.2002) (citations and quotations omitted).

¶ 16 In this case, the trial court found the child victim competent to testify, N.T., 8/25/03, at 177; following our careful review of the record, we agree with the court's assessment. The victim was questioned extensively at the pre-trial competency hearing by both the Commonwealth and appellant, and was able to frame relevant and intelligent answers to all the questions posed. Specifically, the victim answered questions relating to her age, birthday, current and former addresses, her best friend, with whom she resided, her pet's name, what school she attended, and in which grade she was. *Id.* at 86–88, 92–103. Her testimony further reveals she has the capacity to distinguish between the truth and a lie, and is conscious of the consequences of making an untruthful statement. *Id.* at 88–90. Moreover, the

victim was able to recall the events surrounding the alleged incident with extreme detail, including the layout of her bedroom and the style of pajamas she was wearing on the day in question. *Id.* at 97–98, 113–119, 130–143, and 146–150. Appellant's claim must fail.

¶ 17 Appellant also alleges trial court error in "denying defendant's motion to suppress the testimony of Officers Fedullo and Sharratta regarding statements allegedly made by Defendant, as they were obtained in violation of Defendant's right against self-incrimination." Appellant's brief at 27.

[A] challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (citations omitted). In this case, the trial court made the following findings of fact and conclusions of law with regard to appellant's suppression motion.

On August 29th, 2000, the Defendant voluntarily appeared at the Hazleton Police Department to meet with Detective Fedullo for a voice stress test which was requested by officials of the Children and Youth Service.

Defendant was not under arrest nor was he in custody nor were there any indications that he was under custodial interrogation.

The Defendant was given Miranda warnings. He understood them, and he voluntarily waived them.

The questioning was conducted by the police. The Defendant understood the nature of the questioning and the purpose of the questioning. There was no deception perpetrated by the police as to what the intent of the questioning was and the purposes to be used by the questioning.

The Defendant voluntarily gave statements to both Officer Fedullo and later to Officer Sharratta, both of which were voluntary and both of which followed knowing and intentional waivers of the Miranda warnings.

The conclusions of law: Proper Miranda warnings were presented to the Defendant, they were timely, although under the law they may not have been necessary. Nevertheless, they were done.

The statements of the Defendant were voluntary. There is no violation of the United States Constitution or the Pennsylvania Constitution. The statements are admissible at the time of trial.

N.T., 8/26/03, at 272–274.

¶ 18 Appellant argues his "statements were illegally obtained through deception by the officers" after he voluntarily appeared for a voice stress test. Appellant's brief at 28. Specifically, appellant contends:

Without advising defendant that the test was complete, and without giving any additional Miranda warnings, [O]fficer Fedullo immediately followed up with an interrogation which elicited more of the alleged statements from defendant. The alleged inculpatory statements to [O]fficer Sharratta followed, with no ad-

ditional discussion about warnings or admissibility. *Id.* (citations omitted). Appellant avers it is unreasonable to expect that he would distinguish between a voice stress test, the results of which appellant was informed were inadmissible, and the interrogations which occurred immediately thereafter. *Id.* We disagree.

¶ 19 Review of the record indicates that Detective Fedullo provided appellant with both a *Miranda* rights warning form, which appellant acknowledged verbally and in writing that he understood, and a *separate form* obtaining his consent to the voice stress test prior to its administration. N.T., 8/26/03, at 188–190, 193–194; Commonwealth's Pre–Trial Exhibit Nos. 2 and 3, *admitted Id.* at 191, 242. Detective Fedullo further explained to appellant that the *results of the voice stress test* were inadmissible in any court proceedings. *Id.* at 194. Based on the foregoing, we cannot conclude that Detective Fedullo's comments could reasonably confuse appellant into believing the statements he made subsequent to the voice stress test were inadmissible.

¶ 20 Additionally, appellant argues he was entitled to a supplementary *Miranda* warning after the voice stress test, "as the circumstances reasonably led [him] to conclude that he was not free to leave." Appellant's brief at 28–29. We disagree.

¶ 21 This Court has recognized that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. DeJesus*, 567 Pa. 415, 428, 787 A.2d 394, 402 (2001). The ultimate inquiry in determining custody for *Miranda* purposes is whether there exists a formal arrest or a restraint on a person's freedom of movement sufficient to constitute an arrest. *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959 (2002). A "defendant is in custody when the totality of the circumstances indicates an intention to subject him to the actual control and will of the person making the arrest." *Commonwealth v. Ford*, 539 Pa. 85, 98, 650 A.2d 433, 439 (1994) (citation omitted).

¶ 22 In this case, the record clearly demonstrates appellant was not in custody at the time he made the inculpatory statements. Appellant voluntarily drove himself to the Hazleton City Police Station to take the voice stress test, and was fully aware of the victim's allegations at that time. N.T., 8/27/03, at 561–562; N.T., 8/28/03, at 672–673. Further, at the conclusion of the voice stress test, appellant signed a release form acknowledging he had been well-treated; remained of his own free will; and was advised he could leave at any time. Commonwealth's Pre–Trial Exhibit No. 3, *admitted* N.T., 8/26/03, at 242. Likewise, appellant was never placed under arrest at any time during the interview, nor was his movement restrained in any way during his visit to the police station. N.T., 8/27/03, at 547–548, 590. Accordingly, appellant's claim must fail.

¶ 23 Appellant also argues the Commonwealth's failure to provide sufficient notice of its intent to introduce his inculpatory statements at trial constituted a violation of his due process rights. Appellant's brief at 29. Having failed to cite any legal authority in support of this argument, appellant waived this claim. *Commonwealth v. Alsop*, 799 A.2d 129 (Pa.Super.2002) (where an appellant's brief is devoid of any arguments in support of his contention, the issue is deemed waived).; Pa.R.A.P. 2119 Argument, (b) Citations of authorities.

¶ 24 We now turn to appellant's arguments the court erred in admitting hearsay statements of the child victim into evidence. Appellant's brief at 29–32. In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel*, 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). An abuse of discretion requires:

not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer*, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

¶ 25 Generally, an out-of-court statement is inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. *Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842 (1996). "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact. Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.* at 844 (citations omitted).

¶ 26 Appellant argues the trial court abused its discretion by improperly admitting statements made by the child victim to Debbie Dietrick into evidence under the Tender Years Act. Appellant's brief at 3, 29. Deitrick testified at both the pre-trial hearing and at trial as to the victim's statements and actions on the day following the offense. N.T, 8/25/03, at 81–84; N.T., 8/26/03, at 356–369, *discussed supra*. Appellant avers "there was not sufficient indicia of reliability to allow any of the statements into evidence, especially in light of the child's age, the ambiguity of the statements, the passage of time, and Ms. Dietrick's lack of qualifications to interrogate a child on the relevant issues and bias." Appellant's brief at 30. We disagree.

¶ 27 The tender years exception to the rule against hearsay is set forth in 42 Pa.C.S.A. § 5985.1, Admissibility of certain statements. The tender years exception permits a hearsay statement of a child sexual abuse victim under the age of twelve to be admissible if the evidence is relevant and the time, content and circumstances of the statement provide sufficient indicia of reliability. *Commonwealth v. O'Drain*, 829 A.2d 316 (Pa.Super.2003); 42 Pa.C.S.A. § 5985.1(a) General rule. "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002) (citation omitted). The factors to be considered by a trial court in determining whether the child declarant was likely to be telling the truth when the statement was made include:

(1) the spontaneity and consistent repetition of the statement(s); (2) the mental state of the declarant; (3) the use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate.

*Commonwealth. v. Hanawalt*, 419 Pa.Super. 411, 615 A.2d 432, 438 (1992).

¶ 28 After careful review, we agree with the trial court, following its consideration of the factors enumerated in

*Hanawalt,* that Deitrick's testimony "clearly established sufficient indicia of reliability to allow introduction of the occurrence at trial." Trial Court Opinion, Augello, J., 6/15/2004, at 5. We reiterate the well-reasoned Opinion of the trial court.

The victim's parents were both married at this time. The victim had what seemed to be a good relationship with the defendant. There was absolutely no motive for the child to fabricate this event. This certainly is conduct someone would not expect a three year old to speak of. There is no evidence that the victim's mental state was anything other than normal. The victim's actions and statements that followed were completely spontaneous and remained consistent through questioning at that time by Mrs. Deitrick.

*Id.*

¶ 29 Appellant further argues "Debbie Dietrich [sic] was improperly allowed to testify regarding statements of the alleged child victim beyond the Notice provided under the Tender Years Act." Appellant's brief at 30. Specifically, appellant contends the Commonwealth's notice "makes no reference to any statement of the child that defendant put his finger in her 'hole,' or that he said 'umm-umm, that tastes good" after allegedly licking the victim's vagina. *Id.* Appellant's claim is without merit.

¶ 30 The notice provision of the Tender Years Act states:

(b) Notice required.—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1(b). The Commonwealth filed notice of its intent to present the out-of-court statements of the child victim on July 22, 2003. Record, No. 11. This notice provides, *inter alia,* that the child "told Mrs. Deitrick that her father, Adam Hunzer, had put his finger in her private area and also licked her private area." *Id.* While it is undisputed that a party is required to provide notice of its intention to offer a hearsay statement at trial by way of the tender years exception, the notice need not contain an exact word-for-word recitation of that out-of-court statement, as appellant suggests. Rather, the Act merely requires that the notice contain "the particulars of the statement." 42 Pa.C.S.A. § 5985.1(b). In this case, the statements at issue were reasonably within the parameters of the Commonwealth's notice to appellant sufficient to support their admission. We reject appellant's claim of error.

¶ 31 Appellant next argues the trial court improperly admitted out-of-court statements of the victim into evidence as prior consistent statements. Appellant's brief at 3, 30–31.

¶ 32 At trial, Commonwealth witness Tamara Henderson testified that she was involved in the investigation of the alleged incident in her capacity as a caseworker for Luzerne County Children and Youth Services and interviewed the victim on three separate occasions. N.T., 8/27/03, at 491–492. During cross-examination, appellant questioned Henderson with regard to prior inconsistent statements the victim made to her on June 30, 2000 and July 11, 2000. *Id.* at 496–523. On redirect-examination, the trial court permitted the Commonwealth to elicit testimony from

Henderson regarding prior consistent statements of the victim. *Id.* at 527–539.

■ ¶ 33 The law with regard to whether a trial court may properly admit prior consistent statements of a child victim of sexual assault, as relied on by the trial court, is well-settled.

To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay.

■ The general rule precluding corroboration of unimpeached testimony with prior consistent statements is subject to exceptions when particular circumstances in individual cases tip the relevance/prejudice balance in favor of admission. Among the common examples of such exceptions are prior consistent statements which constitute prompt complaints of sexual assault. . . . Evidence of a prompt complaint of sexual assault is considered specially relevant because (rightly or not) a jury might question an allegation that such an assault occurred in absence of such evidence.

Prior consistent statements may also be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment.

Similarly, jurors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

■ The principle exception to the general rule of exclusion is that prior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

*Commonwealth v. Willis,* 380 Pa.Super. 555, 552 A.2d 682, 691–692 (1988) (citations omitted).

¶ 34 Appellant avers the trial court improperly relied on *Willis* "as allowing prior consistent statements into evidence without. . . admissibility under Pa.R.E. 613, contrary to the ruling in *Commonwealth v. Jubilee,* 403 Pa.Super. 589, 589 A.2d 1112 (1991)." Appellant's brief at 31–32. Appellant contends he should have been given the opportunity to confront and cross-examine the declarant victim with regard to her prior consistent statements, as required under Pa.R.E. 613(c).[3] *Id.* After

---

**3.** In relevant part, Rule 613(c) provides:

Evidence of a prior consistent statement by

careful review and consideration, we disagree.

¶ 35 Appellant's reliance on *Jubilee* is misplaced. *Jubilee* is distinguishable from this case, and involves a prosecutor's attempt to use prior consistent statements to bolster a witness who provided a contradictory version of the facts. *Id.* at 1115. Here, the Commonwealth utilized the victim's prior consistent statements to rebut an inference of recent fabrication arising during cross-examination.

■ ¶ 36 Review of the record indicates the character of appellant's impeachment "was such that the trial court could reasonably exercise its discretion to permit admission of evidence of prior consistent statements to corroborate the child victim's impeached testimony." *Willis, supra* at 693. The victim was subjected to extensive cross-examination in an attempt to discredit her recollection of the incident in question. N.T., 8/26/03, at 307–349. Appellant also expressly impeached the victim's testimony by questioning Henderson about inconsistent statements the victim had given during interviews. N.T., 8/27/03, at 496–523. Moreover, appellant indirectly impeached the victim's testimony through his denial that he ever put his finger and tongue in her vagina. N.T., 8/28/03, at 683–684.

¶ 37 As such, the admission of the victim's statements was proper; we reject appellant's claim of trial court error.

■ ¶ 38 In a one-sentence argument, appellant further contends the trial court "failed to properly instruct the jury

that the statements presented by the Commonwealth could only rehabilitate under Pa. R.E. 613(c), and could not be used as substantive evidence." Appellant's brief at 31. Review of the record indicates appellant neither objected to the jury instructions on this basis nor proposed a suggested jury instruction. N.T., 8/28/03, at 801. Accordingly, appellant's claim is waived. *See Gooding, supra.* In any event, this claim is without merit. As the following excerpt clearly indicates, the trial court properly instructed the jury that prior consistent statements of the victim could not be used as substantive evidence.

You have also heard that the alleged victim made statements on earlier occasions that were consistent with her testimony. This evidence may be considered by you for one purpose only; that is, to help you judge the credibility and weight of the testimony given by the witness. You may not regard evidence of a prior consistent statement as proof of the truth of any matter asserted in the statement.

N.T., 8/28/03, at 794–795.

■ ¶ 39 We now turn to appellant's argument his due process rights were violated by the Commonwealth's delay in filing charges. Appellant's brief at 3, 32. It is well-settled that "to establish a due process violation for a delay in prosecution, a defendant must show that the passing of time caused actual prejudice and that the prosecution lacked sufficient and proper reasons for postponing the prosecution." *Commonwealth v. Snyder,* 552 Pa. 44, 54,

---

a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
(1) fabrication, bias, improper influence or motive, or faulty memory and the statement

was made before that which has been charged existed or arose;

Pa.R.E. 613 Prior Statements of Witnesses, (c) Evidence of Prior Consistent Statement of Witness.

713 A.2d 596, 601 (1998) (citations omitted).

¶ 40 In this case, the alleged incident occurred on July 28, 2000. The Commonwealth filed charges against appellant on February 20, 2002, approximately four days after the victim was found competent to testify. Appellant argues that during this delay "the Commonwealth failed to conduct an adequate, truth finding investigation." Appellant's brief at 32. Appellant further claims this delay deprived him of the opportunity to generate exculpatory evidence, including "statements from the child to better demonstrate her inability to tell a good touch from bad touch, and truth from lie." *Id.* at 32–33, 713 A.2d 596.

¶ 41 After careful review, we conclude appellant's due process rights were not violated by the Commonwealth's delay in filing criminal charges. We reiterate the sound reasoning of the trial court.

> [D]efendant has done nothing other than to make a blanket assertion that he was deprived the opportunity to present exculpatory evidence. Nowhere in defendant's post-sentence motion is there any mention of what this claimed exculpatory evidence may be, as is required pursuant to Pa.R.Crim.P. 720. Defendant does not establish any actual prejudice with any specificity whatsoever, nor does he establish an improper motive for the Commonwealth's delay in filing charges.

Trial Court Opinion at 8.

¶ 42 Appellant next argues the trial court abused its discretion by imposing a sentence that was excessive and inadequately explained. Appellant's brief at 3, 33. Specifically, appellant avers the trial court failed to "state an adequate reason, if any, to justify a sentence beyond the minimum guideline of 22 months for aggravated indecent assault." *Id.*

¶ 43 The standard of review in assessing whether a trial court has erred in fashioning a sentence is well-settled. "Imposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion." *Commonwealth v. Griffin,* 804 A.2d 1, 7 (Pa.Super.2002) (citation omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Cunningham,* 805 A.2d 566, 575 (Pa.Super.2002) (citation omitted). To constitute an abuse of discretion, "a sentence must either exceed the statutory limits or be...manifestly excessive." *Commonwealth v. Fish,* 752 A.2d 921, 923 (Pa.Super.2000) (citation omitted).

¶ 44 The sentencing range for aggravated indecent assault, a felony of the second degree, is 22 to 36 months, with a mitigating/aggravating variance of plus/minus 12. N.T. Sentencing, 12/15/03, at 16. In this case, the trial court sentenced appellant to a term of incarceration of 30 to 60 months, well within the standard range of the guidelines. It is well-settled that "if the court sentences within the guidelines' suggested ranges, there is no need for the sentencing court to otherwise manifest on the record that it considered the guidelines. In such a case, consideration of the guidelines is presumed to be evidenced by the actual sentence imposed." *Commonwealth v. Adams,* 694 A.2d 353, 354 (Pa.Super.1997) (citation omitted). Moreover, a sentencing judge may satisfy requirement of disclosure on the record of his reasons for imposition of a particular sentence without providing a detailed, highly technical statement. *Com-*

*monwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). Here, the court stated the reasons for its sentence during the December 15, 2003 Sentencing Hearing, expressly noting "any lesser sentence would diminish the seriousness of the offenses committed." N.T. Sentencing, 12/15/03, at 14. Accordingly, appellant's claim fails.

¶ 45 Appellant also argues the trial court abused its discretion by depriving him of the opportunity to obtain an expert evaluation on the competency of the child victim, and to explore the possibility of whether her testimony was unduly influenced or tainted. Appellant's brief at 3, 34–35. We disagree.

¶ 46 Our review of the record indicates appellant requested a continuance to obtain an expert evaluation on the victim's competency on August 25, 2003, just one day before trial. N.T., 8/25/03, at 83–84. "The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." *Griffin, supra* at 12 (citation omitted). Here, the trial court acted fully within its discretion to deny appellant's motion for continuance made on the eve of trial. *Commonwealth v. Smith,* 848 A.2d 973 (Pa.Super.2004); *see also* Pa. R.Crim.P. 106 Continuances in Summary and Court Cases, (C) (generally, a motion for continuance on behalf of the defendant shall not be made later than 48 hours before the time set for the trial.).

¶ 47 Moreover, we find no error on the part of the trial court in denying appellant the opportunity to question the victim with regard to whether her testimony was unduly influenced or tainted as a result of speaking to her mother and/or grandmother.

Q. What did they tell you—if they told you you were going to be asked ques-

tions about your daddy, what kind of things did they go over with you—to help you got (sic) ready could come in and talk?

MS. VIOLI: Objection, Judge. These are not competency questions. These are credibility questions.

THE COURT: Sustained.

.   .   .   .   .   .

Q. Does—do you ever have talks with either your mom or your grandma about where he may be or about the fact that you would have to come and tell us information again about your dad?

MS. VIOLI: Same objection, Judge.

THE COURT: Sustained.

N.T., 8/25/03, at 105–106.

¶ 48 The appropriate venue to explore allegations of taint is a competency hearing. *Commonwealth v. Delbridge,* 578 Pa. 641, 855 A.2d 27 (2003). Our Supreme Court has defined the parameters for conducting a taint inquiry:

In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption.

*Id.* at 664, 855 A.2d at 40 (citation omitted). In this case, appellant failed to present any evidence of taint prior to questioning the victim at the competency hearing; nor did he argue that taint should be found. Accordingly, the trial court's refus-

al to allow appellant to question the victim along these lines was proper.

■ ¶ 49 Next appellant challenges the testimony of the Commonwealth's expert witness Dr. Yarczower. He contends the testimony should have been suppressed for lack of notice, and his due process rights were violated because he had no opportunity to prepare a contrary expert opinion. Appellant's brief at 3, 35–36. Appellant has failed to cite any legal authority whatsoever in support of this argument, and has thereby waived the claim. *Alsop, supra;* Pa.R.A.P. 2119(b).

¶ 50 Finally, appellant argues "[t]he Judge improperly denied [his] request for a special interrogatory for the jury to determine whether penetration was proven." Appellant's brief at 3, 36.

■ ¶ 51 A trial court possesses broad discretion in phrasing its instructions to the jury and will not be found to have abused its discretion unless the instructions fail to clearly, adequately, and accurately present the law. *Commonwealth v. Bracey,* 831 A.2d 678 (Pa.Super.2003) (citations omitted). Proper appellate review dictates this Court "consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue." *Commonwealth v. Williams,* 557 Pa. 207, 244, 732 A.2d 1167, 1187 (1999) (citation omitted). Moreover, an appellant's belief that a court's instructions should contain additional explanation or his chosen dicta will "not render a jury charge defective." *Commonwealth v. Martin,* 727 A.2d 1136, 1140 (Pa.Super.1999); *Commonwealth v. Murphy,* 795 A.2d 1025 (Pa.Super.2002).

■ ¶ 52 The trial court in this case utilized the standard jury instructions for all of the offenses charged, and properly instructed the jury that penetration is one of the elements required to be proven for aggravated indecent assault.

The Defendant is charged with aggravated indecent assault. In order for the Defendant to be guilty of aggravated indecent assault, you must be satisfied that the following three elements have been proven beyond a reasonable doubt.

First, that the Defendant penetrated, however slightly, the genitals of [the child] with his finger. Second, that the Defendant did not do so for a good faith medical, hygienic or law enforcement procedure or purpose. And third, that at the time the alleged victim was less than 13 years old.

N.T., 8/28/03, at 798–799. We reject appellant's final allegation of error.

¶ 53 Judgment of sentence affirmed.